# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| CARL G. LANDOWSKE, | Case No.:1:16-cv-00154-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security | |
| Respondent. | |

Pending is Petitioner Carl G. Landowske's Petition for Review (Dkt. 1), appealing the

Social Security Administration's final decision to deny his claim for disability and disability

insurance benefits.[1] *See generally* Pet. for Review (Dkt. 1). This action is brought pursuant to

42 U.S.C. §§ 405(g) and 1383(c)(3). Having carefully considered the record and otherwise

being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On December 18, 2012, Carl G. Landowske ("Petitioner") protectively applied for Title

II disability and disability insurance benefits, and for Title XVI supplemental security income.

Petitioner alleged disability beginning March 7, 2011, which he later amended to December 13,

2011. His claims were denied initially on April 17, 2013 and then again on reconsideration on

July 18, 2013. On July 30, 2013, Petitioner timely filed a Request for Hearing before an

---

[1] Nancy A. Berryhill became the acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted in for Carolyn Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

Administrative Law Judge ("ALJ").  On June 18, 2014, ALJ Luke A. Brennan held a hearing in

Boise, Idaho, during which Petitioner, represented by attorney Taylor Mossman, appeared and

testified.  Impartial vocational expert Kent Granat also appeared and testified at the hearing.

On October 6, 2014, the ALJ issued a Decision denying Petitioner's claim, concluding

that Petitioner was not disabled within the meaning of the Social Security Act.  Petitioner timely

requested review from the Appeals Council on or about December 5, 2014 and, on March 4,

2016, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision

the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely filed the instant action,

arguing that "[t]he decision denying Petioner's claim is not in accordance with the purpose and

intent of the Social Security Act, nor is it in accordance with the law, nor is it in accordance with

the evidence, but contrary thereto and to the facts and against the evidence, in that Petitioner is

disabled from performing substantial gainful activity."  Pet. for Review 2 (Dkt. 1).  Petitioner

contends the ALJ erred in four ways: (1) in rejecting the opinion of Petitioner's treating

provider; (2) in concluding Petitioner could return to past relevant work as a clinical counselor;

(3) in assigning Petitioner a residual functional capacity that is not supported by the record; and

(4) in rejecting Petitioner's subjective complaints.  Pet'r's Br. 9–10 (Dkt. 13).  Petitioner asks the

Court to remand for an immediate award of benefits.  *Id.* at 22.

## II.  <u>STANDARD OF REVIEW</u>

To be upheld, the Commissioner's decision must be supported by substantial evidence

and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, -- F.3d --, 2017

WL 4053751, *6 (9th Cir. 2017).  Findings as to any question of fact, if supported by substantial

**MEMORANDUM DECISION AND ORDER - 2**

evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less than a preponderance (*Trevizo*, 2017 WL 4053751 at *6), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098.  Considerable weight must be given to the ALJ's construction of the Social Security Act.  *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009).  However, reviewing federal courts "will not rubber-stamp an administrative decision that

is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## II. <u>DISCUSSION</u>

### A. **Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since December 13, 2011, the amended alleged onset date. (AR 14).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination

**MEMORANDUM DECISION AND ORDER - 4**

of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that cause no more than minimal limitation on an individual's ability to work. SSR 96-3p, 1996 WL 374181 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: "ischemic heart disease, status post myocardial infarction; coronary artery disease; hypertension; obesity; hyperlipidemia; obstructive sleep apnea." (AR 15).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, his claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ concluded that Petitioner does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 18).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is his

or her ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work he or she performed within the last 15 years or 15 years prior to the date that disability must be established, as long as the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the RFC:

> to lift and carry 10 pounds occasionally, while able to stand or walk for a total of 2 hours and sit for a total of 6 hours in an 8-hour workday. He is unable to climb ladders or scaffolds, but is able to occasionally climb ramps or stairs, and he can frequently stoop, kneel, crouch and crawl. He is able to tolerate occasional exposure to extreme cold, extreme heat, and humidity, and he should avoid all exposure to hazards, including unprotected heights and moving machinery.

(AR 19). He further found that Petitioner is able to perform his past relevant work as a Clinical Counselor. (AR 26).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled. Here, because the ALJ found that Petitioner is able to perform his past relevant work as a clinical counselor, the ALJ did not consider whether there are other jobs that exist in significant numbers in the national economy that Petitioner can perform. Based on the finding that Petitioner could engage in past relevant work, the ALJ ultimately concluded that Petitioner "has not been under a disability, as

**MEMORANDUM DECISION AND ORDER - 6**

defined in the Social Security Act, from December 13, 2011, through the date of this decision."

(AR 27).

**B.    Analysis**

Petitioner argues the ALJ's decision denying benefits is not supported by substantial

evidence and is not based upon the application of the correct legal standards.  Pet'r's Br. 9 (Dkt.

13).  Specifically, Petitioner asserts that the ALJ erred (1) in rejecting the opinion of his treating

provider; (2) in classifying Petitioner's past relevant work as a Clinical Counselor; (3) in

assigning Petitioner an RFC that is not supported by the record; and (4) in rejecting Petitioner's

subjective complaints.  *Id.* at 9–10.  Each of these assignments of error are considered below.

1.    The ALJ Did Not Err in Rejecting the Opinion of Treating Provider Lassere in
Favor of the Opinions of Nonexamining Consultative Physicians.

Petitioner contends the ALJ erroneously rejected the opinion of his primary care provider

Donna Lassere ("Nurse Lassere"), who is an Advanced Practice Registered Nurse ("APRN").

Pet'r's Br. 10–14 (Dkt. 13).

Importantly, in the world of disability claims, the medical opinion of a treating physician

is entitled to "special weight."  *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989).  This

deference is warranted because the treating physician "is employed to cure and has a greater

opportunity to know and observe the individual."  *Id*.  However, a treating physician's opinion is

not necessarily conclusive.  *Id*. at 762.  Clear and convincing reasons are required to reject a

treating physician's conclusions.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  When

these conclusions are contradicted by another doctor, the ALJ must provide specific and

legitimate reasons, supported by substantial evidence in the record, for rejecting them.  *Id*.

Additionally, C.F.R. § 404.1527 states as follows:

**MEMORANDUM DECISION AND ORDER - 7**

Treatment relationship. Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.

Paragraph (c)(2)(i) of § 404.1527 concerns the length of the treatment relationship and the frequency of examination. Paragraph (c)(2)(ii) concerns the nature and extent of the treatment relationship. Paragraphs (c)(3) through (c)(6) deal with supportability, consistency with the record as a whole, specialization, and miscellaneous factors.

Here, Nurse Lassere was Petitioner's primary care provider from September 2012 through the date of the ALJ decision. (AR 2469). Nurse Lassere opined that Petitioner can regularly work zero hours in a day and that his medical impairments or treatment make him likely to be absent from work more than 26 days per month. (AR 2471). She further opined that in an 8-hour work day Petitioner can stand or walk zero hours and can sit for a total of less than one hour. (AR 2471–2472). When prompted "[w]hat medical findings support this assessment / opinion?" she noted "Had MI by simply holding his ASA for colonoscopy – very fragile case." (AR 2474).

The record also discloses an opinion prepared by consultative physician Dr. Ward Dickey, MD. (AR 77). Dr. Dickey recommended a sedentary RFC for Petitioner, but he noted

that reconsideration may be appropriate if Petitioner were to undergo a subsequent cardiac catheterization procedure. *Id.* Thereafter Petitioner did undergo two cardiac catheterization procedures. (AR 681, 2352–2353).

After a lengthy analysis, the ALJ assigned Nurse Lassere's assessment little weight:

Given these extreme limitations, I asked the claimant at the hearing whether they are accurate. With regard to his ability to work no hours in a day, he testified that just doing a few dishes causes him to have to sit down and he is unsure if he could work a day a week anymore. He affirmed that he typically spends his day reclined (versus sitting or standing), so he thinks Ms. Lassere's medical source statement is generally accurate. However, I find the assessment unpersuasive. Notably, the extreme limitations and explanations for those limitations are not consistent with or supported by the record as a whole, including Ms. Lassere's own progress notes as well as some of the claimant's own testimony. The record showing that the claimant wished to maintain a garden hardly supports an inability to perform any work whatsoever. Perhaps most questionable, there is no evidence of a bilateral hip condition, including no complaints or reports of hip difficulties, to account for the extreme sitting limitations. The claimant had been sitting at the hearing for over a half-hour when he reported an ability to sit only 10 minutes. Similarly, there is insufficient objective evidence to substantiate the "zero" ability to stand or walk. In fact, generally all the objective examination findings describe the claimant with a normal gait and he was described as successfully walking five laps around the hospital halls without difficulty during his February 2014 hospitalization. Even affording the claimant some benefit of the doubt with regard to the left ankle nodules that are noted in the record, there is still insufficient evidence to show that the claimant could not perform sedentary work. The claimant does consistently report shortness of breath with exertion, but this is not shown in the record to the extent that these extreme limitations are warranted and though Ms. Lassere described angina with any exertion, the claimant denied chest pain with exertion in February 2014. Further, the claimant had a normal left ventricular ejection fraction (greater than 60%) upon testing in February 2014. Contrary to restrictions opined by Ms. Lassere, she has instructed the claimant on numerous occasions to stop smoking and lose weight, noting that his exercise intolerance is associated with deconditioning ; therefore, he should engage in low intensity exercise such as walking. Furthermore, the voluminous record fails to account for the upper extremity restrictions, in that there is no objective evidence of upper extremity impairment and the claimant testified that he is able to reach straight and overhead. While he alleged that he drops things for no apparent reason, there are no complaints or objective findings to support any upper extremity limitations. Given the lack of objective evidence or complaints for upper extremity limitations or hip limitations, it would seem that Ms. Lassere relied on the claimant's own subjective complaints, which also diminishes the persuasiveness of the assessment. Notwithstanding that Ms. Lassere had previously

indicated the claimant could perform light duty, then indicated sedentary type work would be appropriate (4 to 6 hours a day), the record does not support the current level of restriction opined in exhibit 17F. For all of these reasons, I assign the assessment little weight.

(AR 25).

Petitioner contends the ALJ erred by adopting Dr. Dickey's opinion and by rejecting Nurse Lassere's opinion. He first argues it was improper for the ALJ to adopt Dr. Dickey's opinion because it stated reconsideration might be necessary if Petitioner underwent a cardiac catheterization procedure, and Petitioner did in fact undergo two such procedures. Pet'r's Br. 12 (Dkt 13). He then argues it was improper for the ALJ to reject Nurse Lassere's opinion because it is supported by various evidence in the record and because some of the ALJ's findings of inconsistencies between her opinion and the record can be adequately explained. Pet'r's Br. 12–14.

Respondent argues that as an APRN rather than a physician, Nurse Lassere is an "other source" rather than an "acceptable medical source" and her opinion can therefore be rejected based on "germane reasons" rather than the higher standard requiring "specific and legitimate reasons." Resp't's Br. 3 (Dkt. 14). Respondent then argues that the ALJ properly considered the entire record, including Dr. Dickey's opinion and the fact of the subsequent catheterization procedures, before assigning Petitioner's RFC. *Id.* at 6. Finally, Respondent argues that an ALJ may reject a treating provider's opinion when it is inconsistent with the claimant's statements or the provider's notes or observations, or when it is unreasonable in light of other evidence in the record. *Id.* at 8.

The Court assumes for the sake of argument that Nurse Lassere is an "acceptable medical source."[2] Therefore, the ALJ could only reject her opinion, which was contradicted by Dr. Dickey, by providing specific and legitimate reasons, supported by substantial evidence, for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). For the reasons that follow, the Court is satisfied that the ALJ satisfied this standard.

Petitioner has not shown the ALJ erred in adopting Dr. Dickey's opinion. The language in the opinion was that "[i]f [Petitioner] has another cath, we may need to reconsider." (AR 77). Dr. Dickey did not frame this as obligatory or essential; he merely acknowledged a possibility that reconsideration could be appropriate. In fact, a subsequent opinion by consultative physician Dr. Coolidge, MD, affirmed Dr. Dickey's opinion even though the record before Dr. Coolidge showed that Petitioner had already undergone another cardiac catheterization procedure. (AR 107). There was substantial evidence for the ALJ to adopt the opinion of Dr. Dickey, notwithstanding the note therein regarding potential reconsideration.

Nor has Petitioner shown error in the ALJ's rejection of Nurse Lassere's opinion. The ALJ documented numerous inconsistencies between her opinion and other portions of the record: he found no medical evidence of record supporting her opinion Petitioner could sit for less than one hour per day or that he has upper extremity limitations; he found affirmative medical evidence that Petitioner has a normal gait and walked five laps around a hospital in February

---

[2] Regulations expanding the definition of "acceptable medical sources" to include APRNs such as Nurse Lassere went into effect March 27, 2017. 20 C.F.R. §§ 404.1502, 404.1513; *see also* 82 Fed. Reg. 15,263. Petitioner's claim was filed before that date, and therefore the expanded definition does not automatically apply here. *See* 20 C.F.R. § 404.1527. Because the Court concludes the ALJ's rejection of Nurse Lassere's opinion was proper regardless of whether she is considered an "acceptable medical source," the change in the law has no bearing on the outcome of this case.

**MEMORANDUM DECISION AND ORDER - 11**

2014, contradicting her opinion Petitioner could stand or walk for "zero" hours; he found her opinion inconsistent with Petitioner's own stated desire to maintain a garden; and he found her opinion inconsistent with her own notes that Petitioner could perform sedentary work. (AR 25).

Petitioner argues some but not all of these points. However, his arguments are framed as alternate interpretation and weighing of the evidence rather than as challenges to the process the ALJ used in deciding to reject Nurse Lassere's opinion. "It is not the Court's role to retry the case or alter credibility determinations and factual findings where the evidence is susceptible of more than one rational interpretation." *Moncada v. Chater*, 60 F.3d 521, 525 (9th Cir. 1995). Petitioner's request to have the Court engage in such impermissible reweighing of the evidence is declined. The ALJ properly provided specific and legitimate reasons, supported by substantial evidence, for rejecting Nurse Lassere's opinion. Petitioner's arguments here do not seriously call into question the ALJ's reasoning. Accordingly, the ALJ's decision in this respect will not be disturbed.

2.      The ALJ Did Not Err in Classifying Petitioner's Past Relevant Work as a Clinical Counselor.

Petitioner contends the ALJ erred in finding that he had previously worked as a Clinical Counselor. Pet'r's Br. 14–16 (Dkt. 13).

The Dictionary of Occupational Titles, on which the ALJ relied, describes the role of Clinical Counselor as follows:

> Counsels individuals or groups regarding psychological or emotional problems, such as stress, substance abuse, or family situations, using evaluative techniques, and develops and implements therapeutic treatment plan in medical setting: Interviews patient to obtain information concerning medical history or other pertinent information. Observes client to detect indications of abnormal physical or mental behavior. Selects and administers various tests, such as psychological tests, personality inventories, and intelligence quotient tests, to identify behavioral or

personality traits and intelligence levels, and records results. Reviews results of tests to evaluate client needs. Plans and administers therapeutic treatment, such as behavior modification and stress management therapy, using biofeedback equipment, to assist patient in controlling disorders and other problems. Changes method and degree of therapy when indicated by client reactions. Discusses progress toward goals with client, such as controlling weight, stress, or substance abuse. Consults with medical doctor or other specialists concerning treatment plan and amends plan as directed. Conducts relaxation exercises, peer counseling groups, and family counseling during clinical therapy sessions. Refers client to supportive services to supplement treatment and counseling. May conduct research in treatment and test validation. May develop evaluative studies of therapy and therapy outcome.

DOT 045.107-050.

The ALJ was required to assess whether Petitioner's RFC permits him to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). This process involves "compar[ing] our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 404.1560(b). But a claimant's "vocational factors of age, education, and work experience" are not considered. 20 C.F.R. § 404.1560(b)(3).

Petitioner presents two arguments that the classification of Clinical Counselor is in error. First, he contends his responsibilities from his prior job are inconsistent with the DOT description of Clinical Counselor. Pet'r's Br. 15–16. Second, he contends he was not previously licensed as a counselor, is not presently eligible for licensure, and could not reasonably be expected to become eligible for licensure, so the classification is wrong. Pet'r's Br. 16. Respondent asserts that licensure status is irrelevant to categorization of past relevant work and that the classification of Clinical Counselor was correct. Resp't's Br. 9–12 (Dkt. 14).

In support of his first argument, Petitioner cites his own hearing testimony that his work involved doing intake assessments and group therapy. (AR 43). At the hearing, the vocational expert testified that this work should be classified in the Clinical Counselor job because "the

one-on-one intake of people would better fit the clinical counselor job." (AR 66). Petitioner

argues that his testimony was that he did not offer one-on-one counseling, so this classification is

incorrect. However, the record does not substantiate that Petitioner did not engage in one-on-

one counseling. At the hearing, the following exchange transpired:

> VE: . . . . When you were working at the psychiatric hospital, did you spend most of
> your time in a one-on-one counseling - -
> CLMT: No, sir.
> VE: - - situation - -
> CLMT: No, sir.

(AR 44). Petitioner was not asked, and the record does not disclose, whether he engaged in one-

on-one counseling even if it did not comprise most of his time. At any rate, the vocational expert

did not rely on one-on-one *counseling* to recommend the Clinical Counselor designation, but

merely on one-on-one intake – which Petitioner does not dispute. Most significantly, however,

is the fact that the DOT description of Clinical Counselor plainly includes counseling groups,

which Petitioner has admitted was a part of his job: "Counsels individuals *or groups* . . . .

Conducts . . . peer counseling *groups*." DOT 045.107-050 (emphases added). On this record,

Petitioner's prior work fits within the description of the Clinical Counselor job as described in

the DOT.

In support of his second argument, Petitioner asserts that "gaining the credentials to work

in a career field in which he burned out due to the emotionally taxing nature of the career, and

maintaining those credentials to a licensing standard, is an unreasonable expectation." Pet'r's

Br. 16 (Dkt. 13). His argument may well reflect a personal conundrum, but the argument

misapprehends the nature of the inquiry into past relevant work. In evaluating whether a

claimant can return to past relevant work, the physical and mental demands of that work are

**MEMORANDUM DECISION AND ORDER - 14**

considered but the education and work experience are not. 20 C.F.R. § 404.1560(b). Petitioner asserts that he has never been licensed as a counselor, and the Court finds no record evidence to the contrary. But regardless of Petitioner's licensure status, the fact remains that Petitioner did previously work in a job the ALJ classified as Clinical Counselor. In concluding that Petitioner could return to past relevant work, there is nothing to indicate the ALJ considered licensure. But there is likewise nothing in the DOT description of Clinical Counselor to suggest that licensure is a prerequisite for that job. Petitioner argues he cannot perform past relevant work as a counselor because he "cannot meet the high standard required of counselors." Pet'r's Br. 16 (Dkt. 13). But he offers no support for his conclusory assertion that there is any particular standard required of counselors. He appears to conflate the capsule description of Clinical Counselor in the DOT with a particular occupation in Idaho that is subject to some unspecified license requirements. This purports to give the ALJ's finding more significance than it really has. The ALJ merely classified Petitioner's past relevant work – the work that Petitioner himself actually engaged in – within the framework offered by the DOT. Challenging that finding based on implicit assumptions about what that classification means in an entirely different framework does nothing to undermine the accuracy or propriety of the finding.

Accordingly, Petitioner has not shown the ALJ erred in classifying his past relevant work as a Clinical Counselor.

3.  The ALJ Did Not Err in Finding Petitioner Has the Residual Functional Capacity for Sedentary Work.

Petitioner contends the ALJ erred by failing to cite a reliable medical source that supported his RFC findings. Pet'r's Br. 17.

**MEMORANDUM DECISION AND ORDER - 15**

A claimant's RFC is his or her ability to do physical and mental activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545. In making this finding, an ALJ must consider all of the claimant's medically determinable impairments, including those that are not severe. 20 C.F.R. § 404.1545(a)(2). A claimant's RFC is the maximum amount of work the claimant is able to perform based upon all of the relevant evidence in the record. SSR 96-8P, 1196 WL 374184. "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.* at *7.

Here, the ALJ found that Petitioner has the RFC "to lift and carry 10 pounds occasionally, while able to stand or walk for a total of 2 hours and sit for a total of 6 hours in an 8-hour workday." (AR 19). He also found that Petitioner is able to occasionally climb ramps or stairs. *Id.*

Petitioner argues the RFC finding does not adequately incorporate the combined effect of all Petitioner's physical and mental limitations on record. Pet'r's Br. 18 (Dkt. 13). He implies that he cannot work until he has painful lipomas removed from his left ankle and he has multiple abscessed or broken teeth removed. *Id.* He then faults the ALJ for not acknowledging that these procedures cannot presently proceed because of his cardiac issues. *Id.* He further asserts that the ALJ "seems to have ignored the repeated documentation of cardiac related symptoms such as chest pain and shortness of breath that [Petitioner] complained of with even mild activity." *Id.* Finally, he argues that the ALJ "seems to neglect the profound impact that [Petitioner's] PTSD and anxiety related symptoms would have on his ability to work." *Id.* at 19.

**MEMORANDUM DECISION AND ORDER - 16**

Respondent argues that Petitioner once again seeks to substitute his judgment – or the judgment of his treating provider – for the ALJ's judgment, and that it is the responsibility of the ALJ, not anybody else, to assign a claimant's RFC. Resp't's Br. 12 (Dkt. 14). Respondent also characterizes Petitioner's arguments on this issue as general allegations that do not cite to any specific evidence related to Petitioner's limitations with his lipomas, teeth, PTSD, or anxiety. *Id.* at 14.

In reply, Petitioner asserts that "[h]ad the ALJ examined the entire record and looked at the big picture of [Petitioner's] limitations he would have noted that all of the limitations put together support a determination of disabled." Pet'r's Reply Br. 6 (Dkt. 15). He also reiterates his argument that the ALJ did not account for all his limitations when assigning an RFC. *Id.*

The ALJ devoted more than six full pages to articulating his findings and analysis regarding Petitioner's RFC. (AR 19–26). It is obvious that he understood his responsibility to explain how and why he reached the conclusions he did. He acknowledged Petitioner's cardiac issues, including chest pain and shortness of breath, at length. (AR 20, 21, 22, 23, 24, 25). He also acknowledged issues with Petitioner's lipomas. (AR 21, 23). The ALJ did not mention any issue with Petitioner's teeth or PTSD, but it is not clear from the record that Petitioner properly raised these issues. For each of these issues, Petitioner cited only a single page in a record nearly 2,500 pages long. Nor is it clear from the scant citations Petitioner offers that these issues were limitations the ALJ should fairly have considered. As to his teeth, the only record citation is to a clinical note by Nurse Lassere that states, "[p]atient to inform denistry [sic] he is on ASA and Plavix prior to appt for extraction as he can not stop these meds." (AR 2076). As

to his PTSD, the only record citation is to a clinical note by Nurse Lassere that states, "PSYCH: (+) continued PTSD symptoms with hypervigilence [sic] and easily startled." (AR 546).

Neither the ALJ nor the Court is required to extensively unfold the record for every issue fairly contemplated by a claimant's allegations. *See Keenan v. Allan, 91 F.3d 1275, 1279* (9th Cir. 1996); *see also White v. Astrue*, 2010 WL 3893951 (D. Idaho Sept. 29, 2010) ("courts are not bound to scour the record for every conceivable error"). Petitioner has not cited to record evidence sufficiently showing that his dental issues or his PTSD were limitations the ALJ should have considered. Nor has Petitioner convincingly shown that he cannot work prior to resolving medical issues with his lipomas and teeth.

As to Petitioner's remaining arguments, he has not met his burden to show that the ALJ erred in assigning an RFC greater than Petitioner believes is reasonable. Petitioner once again seeks to reweigh the evidence. It could very well be true, as Petitioner urges, that "all of the limitations put together support a determination of disabled." Pet'r's Reply Br. 6 (Dkt. 15). But the standard of review here, which is based on substantial evidence, does not call for inquiry into whether an alternate finding could be supported. Rather, it calls for inquiry into whether the ALJ's finding is based on substantial evidence. To the extent Petitioner's arguments apply given the standard of review, they are not persuasive to show the ALJ's RFC finding is unsupported by substantial evidence.

4.     <u>The ALJ Properly Evaluated the Credibility of Petitioner's Testimony Regarding his Subjective Complaints.</u>

Petitioner contends the ALJ erred by improperly discounting his subjective complaints as not entirely credible. Pet'r's Br. 19 (Dkt. 13).

**MEMORANDUM DECISION AND ORDER - 18**

As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *See Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities). In evaluating a claimant's credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, as well as claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958–60 (9th Cir. 2002). Also, the ALJ may consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* SSR 96-3p, 1996 WL 374181 (July 2, 1996). In short, "[c]redibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). To reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick*, 157 F.3d at 722).

Here, the ALJ found that Petitioner's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (AR 20–21). He followed this up with specific examples of inconsistencies between Petitioner's allegations and evidence in the record.

**MEMORANDUM DECISION AND ORDER - 19**

He noted that Petitioner's amended alleged disability onset date is not well-supported because there is no documented medical treatment for nine months following the alleged onset date. (AR 21). He noted that Petitioner regularly smokes cigarettes and marijuana and indicated he is "never going to quit." *Id.* He further noted that in December 2012, Petitioner was not given any work-related restrictions when being discharged three days after suffering a myocardial infarction. *Id.*

The ALJ made additional relevant observations. He noted that in March 2013, Nurse Lassere cleared Petitioner for "light duty," (AR 22) and in April 2013 and October 2013 she recommended sedentary work for Petitioner. (AR 23). In January 2014, Nurse Lassere encouraged Petitioner to walk to improve his exercise tolerance. *Id.*; (AR 2176). He noted that in February 2014 Petitioner stated he had not taken nitroglycerin for his chest pain in several months, contrary to Petitioner's allegations of more consistent or frequent chest pain. (AR 23). He noted that Petitioner was able to walk five laps in hospital hallways in February 2014. (AR 24). He noted that later that same month, Petitioner denied muscle weakness and spasms, including no reports of pack pain or difficulties holding onto objects. *Id.* He noted that in May 2014 Petitioner was described as having a normal gait and breathing easily. *Id.* Finally, he noted more than once that Petitioner remained overweight, continued to smoke, and did not exercise – all in contravention of the medical advice Nurse Lassere repeatedly gave him. (AR 22, 23).

Thus, the ALJ cited abundant and substantial record evidence that was inconsistent with Petitioner's testimony. Petitioner's argument the evidence should be interpreted differently does not call into question the sufficiency of the ALJ's findings. Petitioner has not shown the ALJ erred by rejecting Petitioner's credibility. Because the ALJ decision is entitled to deference on

review, and because it includes uncontested examples of specific reasons for rejecting Petitioner's credibility, the decision will not be disturbed on the basis the ALJ erred by rejecting Petitioner's credibility.

## IV.  CONCLUSION

Petitioner has not shown that the ALJ erred (1) in rejecting the opinion of his treating provider; (2) in classifying his past relevant work as a Clinical Counselor; (3) in finding he has the RFC for sedentary work; or (4) in discounting his credibility with respect to his subjective complaints.  Accordingly, the ALJ's decision is affirmed.

## V.  ORDER

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is **DENIED,** the decision of the Commissioner is **AFFIRMED,** and this action is **DISMISSED** in its entirety, with prejudice.

DATED:  **September 29, 2017**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge